UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES )<br>)<br>v. )<br>)<br>CARLOS LOPEZ )<br>AKA RENE CARLOS ARIAS-LOPEZ )<br>    Defendant. )<br>) | Docket No.: 23-cr-10269-AK |

**CARLOS LOPEZ'S OPPOSITION TO THE GOVERNMENT'S MOTION TO RECONSIDER DETENTION BASED ON CHANGED CIRCUMSTANCES**

On October 13, 2023, following a bond hearing, Mr. Lopez was ordered released on conditions. Following issuance of the release order, after Mr. Lopez was at liberty, and while Mr. Lopez was waiting with counsel to meet with the Probation Department, several U.S. Marshals detained Mr. Lopez, stating that he had an ICE detainer, and that they were going to hold him until the Department of Homeland Security's Immigration, Customs, and Enforcement (ICE) agents could come and detain him pursuant to their detainer. [1] While Mr. Lopez was being detained by the Marshal Service, ICE agents arrived and took custody of Mr. Lopez.[2]

According to the Government, and the bail report prepared in connection with this case, Mr. Lopez has no lawful status in the United States. Undersigned counsel does not practice immigration law, and is appointed, pursuant the Criminal Justice Act, to represent Mr. Lopez in connection with the above-captioned criminal case only.  Counsel has, however, conferred with immigration attorneys regarding

---

[1] *See Affidavit of Counsel*, attached as Exhibit 1.
[2] Counsel does not know exactly how long the Marshal Service detained Mr. Lopez following issuance of the release order, but believes ICE took custody of Mr. Lopez the same day.

1

Mr. Lopez's situation, including with a Supervising Attorney at the National Immigrant Justice Center, who explained that "many noncitizens have no defense to deportation when they are apprehended and placed into removal proceedings by ICE, especially those who are undocumented and have no basis for asserting a fear of returning to their country of origin." *See Letter from David Faherty*, attached as Exhibit 2.

The Government asserts that, according to an unnamed "representative from ICE," on November 6, 2023, Mr. Lopez "accepted an order of removal and waived his right to appeal."[3] *Government's Motion to Reconsider Detention Based on Changed Circumstances* [hereinafter *Government's Motion*], ECF no. 38, at 7.

Mr. Lopez has taken no affirmative action since this Court ordered him released on conditions which would alter the Court's analysis whether he is a flight risk. The only changed circumstances relate to factors beyond Mr. Lopez's control, namely the Executive Branch's internal dispute over whether to prioritize his deportation or prosecution. The Government's attempt to use this Court to resolve this dispute is improper.

## Argument

I. **Mr. Lopez did not create, through his own volition, the "changed circumstance" of his impending removal by the Department of Homeland Security, Immigration and Customs Enforcement (ICE), and thus there are no changed circumstances warranting review of this Court's release order.**

---

[3] The Executive Office for Immigration Review's Automated Case Information system indicates that the order of removal entered on November 13, 2023, not November 6. *See Automated Case Information*, attached as Exhibit 3.

2

### a. Pretrial detention on the basis that a defendant is a flight risk is only available where that risk is due to volitional behavior of the defendant.

Under the Bail Reform Act of 1984 (BRA), a defendant may be ordered detained pending trial if the government establishes by clear and convincing evidence that a defendant is a danger to the community, or by a preponderance of the evidence that a defendant poses a serious risk of flight, *and* where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community." 18 U.S.C. §§ 3142(e), 3142(f); *United States v. Patriarca*, 948 F.2d 789, 792-793 (1st Cir. 1991). Before a Court addresses whether any conditions will reasonably assure a defendant's appearance, it must first conclude that the Government has proven that the defendant is a flight risk.[4] *Patriarca*, 948 F. 2d at 791. If risk of flight has not been proven, the Government has failed at the first step in the analysis, and the defendant must be released.[5] *Id.*

"Risk of flight" must involve an element of a defendant's own volition. *See United States v. Storme*, 83 F.4th 1078, 1083 (7th Cir. 2023) ("the plain import of the term 'flight' connotes an intentional act by a defendant to evade criminal

---

[4] The *Patriarca* court clearly delineated the steps in the detention analysis as follows:

> "We first decide whether . . . the [G]overnment proved that the defendant poses a danger to the community and/or a risk of flight. . . . If this inquiry indicates that the defendant presents no danger to the community and no risk of flight, then the defendant can be released on personal recognizance or unsecured appearance bond as prescribed in 18 U.S.C. § 3142(b). If, however, there is some risk, we proceed to evaluate the conditions to see if they will serve as a reasonable guard."

*United States v. Patriarca*, 948 F. 2d 789, 791 (1st Cir. 1991) (citations omitted).
[5] The only issue the Government raises in its motion to reconsider is risk of flight.

3

prosecution by leaving the jurisdiction"); *United States v. Santos-Flores*, 794 F.3d 1088, 1091 (9th Cir. 2019) ("the risk of nonappearance referenced in 18 U.S.C. § 3142 must involve an element of volition"); *United States v. Barrera-Omana*, 638 F. Supp. 2d 1108, 1111 (D. Minn. 2009) ("The risk of nonappearance referenced in . . . § 3142 has to involve an element of volition"); *United States v. Montoya-Vasquez*, No. 4:08-cr-3174, 2009 WL 103596, at *5 (D. Neb. Jan. 13, 2009) (section 3142 requires a finding that the defendant "would fail to appear by virtue of his own volition, actions and will"). Deportation by immigration officials is not volitional and, therefore, does not constitute flight. *United States v. Ailon-Ailon*, 875 F.3d 1334, 1337 (10th Cir. 2017) (immigration removal is not "flight" where flight must involve element of defendant's volition). Although, to counsel's knowledge, the First Circuit has yet to address the issue, other Circuits have concluded that, because ICE detainers and removals result from *ICE*'s volitional conduct, not a defendant's, the presence of a detainer or removal proceedings are not relevant to a risk of flight analysis under 18 U.S.C. § 3142. *See United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019) ("the 'individualized evaluation' required by the Bail Reform Act does not include consideration of an immigration detainer or the possibility that the defendant, if released from immigration custody, would be held in immigration custody"); *Ailon-Ailon*, 875 F.3d at 1337 ("involuntary removal does not establish a 'serious risk that [the defendant] will flee' upon which pre-trial detention may be based").

> **b. No circumstances have changed since October 13, 2023, due to the exercise of Mr. Lopez's own volition, and thus the Government has presented no evidence that Mr. Lopez presents a serious risk of flight. Instead, the Government improperly asks this court to resolve an Executive Branch turf war between the Department of Justice and the Department of Homeland Security.**

The cases cited by the Government to support its argument that Mr. Lopez's failure to contest his removal is equivalent to an attempt to flee are inapposite. The cases from other jurisdictions supporting the general proposition that a defendant's immigration status *may* be considered in determining whether any combination of conditions can reasonably assure a defendant's appearance shed no light on whether Mr. Lopez's purported failure to contest a removal against which he had no defense constitutes a changed circumstance suggesting flight risk. As discussed above, a court does not reach an analysis of whether conditions can reasonably assure a defendant's appearance unless it has first found that a defendant presents a serious risk of flight. *Patriarca*, 948 F. 2d at 791 (citations omitted).

Likewise, the cases involving defendants who affirmatively sought or requested deportation shed no light on whether Mr. Lopez presents a serious risk of flight, where Mr. Lopez has engaged in no similar conduct. In *United States v. Campos*, no. CR 2:10-MJ-6-SRW, 2010 WL 454903, at *3 (M.D. Ala. Feb. 10, 2010), the defendant expressly and affirmatively sought transfer from pretrial detention to ICE custody for the purpose of being deported in lieu of standing trial. In *United States v. Guzman,* the defendant, at her initial hearing before an immigration judge, had affirmatively requested voluntary departure. *United States v. Guzman,*

5

20-cr-10004 (D. Mass. Feb. 25, 2020), ECF no. 55, at 1-2. The changed circumstance warranting revocation of her release was that "Ms. Guzman ha[d] indicated an intention not to appear for trial by seeking a voluntary departure." *Id*. at 2. Thus, the court concluded, it did "not need to wade into [the] dispute" surrounding whether an impending involuntary deportation should be considered in making a detention decision. *Id*. at 2-3.

Setting aside whether seeking "voluntary departure" could be considered an attempt at flight, Mr. Lopez's purported actions in his immigration case are not analogous to those of Mr. Campos or Ms. Guzman. Mr. Lopez did not seek or express any desire to be transferred to ICE custody. He was taken into ICE custody involuntarily as a direct result of the U.S. Marshal's detention of him following issuance of this Court's release order.[6] It should be noted that this conduct – of coordinating with ICE to place Mr. Lopez into removal proceedings – should be

---

[6] This detention appears to have been unlawful. An ICE detainer neither compels nor permits a U.S. Marshal to hold a defendant in custody beyond his release pursuant to the Bail Reform Act. *United States v. Valdez-Hurtado*, 638 F. Supp. 3d 879, 897 (N.D. Ill. 2022). "First Circuit law is relatively clear. Standing alone, 'an INS [now ICE] detainer' is not 'an order of custody.'" *Fernandez v. Roden*, 2014 WL 347616, at *4 (D. Mass. Jan. 29, 2014) (quoting *United States v. Female Juvenile, A.F.S.*, 377 F.3d 27, 35 (1st Cir. 2004). "Rather, it serves as a request that another law enforcement agency notify the INS [now ICE] before releasing an alien from detention so that the INS [now ICE] may arrange to assume custody over the alien." *Id*. Federal regulations provide the same:

> Any authorized immigration officer may at any time issue a Form I–247, Immigration Detainer–Notice of Action, to any other Federal, State, or local law enforcement agency. A detainer serves to advise another law enforcement agency that the Department seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien. The detainer is a request that such agency advise the Department [of Homeland Security], prior to release of the alien, in order for the Department to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible."

8 C.F.R. § 287.7(a).

imputed to the Government where the U.S. Marshals Service is a bureau in the Department of Justice, of which the U.S. Attorney's Office is also a part.[7] Once in removal proceedings, Mr. Lopez sought no form of voluntary departure and did not otherwise seek his own deportation. According to the Government, he merely failed to contest an order for his removal. Where Mr. Lopez is undocumented and has not expressed any credible fear of returning to Guatemala, he in all likelihood had no defense to that removal, and he also had no right to an attorney to represent him in removal proceedings. His failure to raise a defense in such circumstances cannot fairly be held against him.

Moreover, implicit in the Government's argument equating Mr. Lopez's failure to contest his removal with an attempt to flee is that, even where Mr. Lopez likely has no legitimate defense to removal, the Government would impose on him an obligation to mount a frivolous defense – without counsel – and to provide presumably false testimony that he has fear of returning to a country about which he previously has expressed no such fear. According to the Government, anyone who lacks a legitimate defense to deportation must essentially perpetrate fraud on the immigration court – a court that the Government placed him in front of – or be labeled a flight risk in the District Court. In essence, the Department of Justice, through the U.S. Attorney's Office, is blaming Mr. Lopez for the efforts of the Department of Homeland Security, through ICE, to deport him. Both Departments are within the Executive Branch of the Federal Government. *The Executive Branch*,

---

[7] *Who We Are*, U.S. Marshals Svc., https://www.usmarshals.gov/who-we-are (last visited Nov. 14, 2023); *Our Work*, U.S. Dep't of Just., https://www.justice.gov/our-work (last visited Nov. 14, 2023).

7

The White House, https://www.whitehouse.gov/about-the-white-house/our-government/the-executive-branch/ (last visited Nov. 14, 2023). The Government's request that this Court impute risk of flight to Mr. Lopez's failure to fraudulently argue for relief from removal to which he is not entitled is mere pretext for seeking the resolution of the intra-Executive dispute.

  The "changed circumstance" being imputed by the Government to Mr. Lopez is as follows. The Department of Justice, a department of the Executive Branch, chose to bring criminal charges against Mr. Lopez and prosecute him in the District of Massachusetts for offenses it alleges that he committed. However, during that prosecution, the Department of Justice, through the U.S. Marshal Service, also chose to override this Court's order of release and effectuate a transfer of custody to ICE, part of the Department of Homeland Security, another department of the Executive Branch, for the initiation of removal proceedings. Those proceedings have now concluded, and Mr. Lopez faces removal from the United States by ICE. Thus, the Department of Justice and the Department of Homeland Security coordinated with each other to bring about the removal proceedings against Mr. Lopez. It violates basic notions of fairness and logic for the Government to then turn around and argue that Mr. Lopez, not the Government, is responsible for the removal order against him. Moreover, it does not follow from the initial failure to communicate of the different arms of the Department of Justice – the U.S. Attorney's Office and the U.S. Marshal Service – that Mr. Lopez is a flight risk. One has nothing to do with the other.

It appears that the U.S. Attorney's Office sought to have ICE return Mr. Lopez to DOJ custody and delay removal proceedings, and ICE's response was, essentially, "no." Thus, the Government's true request, through its motion for reconsideration, is to have this Court – *i.e.*, the judiciary – resolve an internal dispute within the Executive Branch. Such a dispute is not appropriate for the judiciary to resolve. *See Barrera-Omana*, 638 F. Supp. 2d. at 1112 ("It is not appropriate for an Article III judge to resolve Executive Branch turf battles."); *United States v. Trujillo-Alvarez*, 900 F. Supp. 2d 1167, 1179 (D. Or. 2012) ("the Executive Branch has a choice to make" of whether to deport the defendant or have him stand trial on the crime charged, and "[i]f ICE takes custody of [the defendant] for the purpose of removing or deporting him, there is little (and probably nothing) that this Court can do about that."). *See also United States v. Munoz-Garcia*, 455 F. Supp. 3d 915, 921-922 (D. Ariz. 2020) (while one department of the Executive sought to prosecute defendant, another department of "the same Executive," violated the pretrial release order by detaining and removing defendant, requiring dismissal with prejudice).

"The BRA [Bail Reform Act] and INA [Immigration and Nationality Act] co-exist . . . and regulate different entities and functions." *United States v. Pacheco-Poo*, 952 F. 3d 950, 952 (8th Cir. 2020). "The BRA and the INA authorize the [G]overnment to pursue both criminal prosecution and removal simultaneously." *United States v. Barrera-Landa*, 964 F.3d 912, 919 (10th Cir. 2020) (quoting *United States v. Lett*, 944 F.3d 467, 461 (2d Cir. 2019)). "[T]he BRA does not give the

district court authority to interrupt ICE's independent statutory obligations to take custody of [a defendant] once he is released. . . . 'ICE's authority to facilitate an illegal alien's removal from the country does not disappear merely because the U.S. Marshal cannot detain him under the BRA pending his criminal trial." *Barrera-Landa*, 964 F.3d at 918-919 (quoting *United States v. Vasquez-Benitez*, 919 F.3d 546, 553 (D.C. Cir. 2019)). As in *Trujillo-Alvarez*, here "[t]he Executive Branch has a choice [to make] of whether to deport [Mr. Lopez] or have him stand trial on the criminal charge[s] . . . pending against him." *Trujillo-Alvarez*, 900 F. Supp. 2d at 1179. It is not for the judiciary to make that choice for the Executive.

    **c. There are remedies available to the Government that would ensure Mr. Lopez's appearance at trial short of revoking his pretrial release.**

As explained by Attorney Faherty, following entry of an order of removal, "ICE has broad discretion on how and when to proceed with removal." *See Exhibit 2* (citing 8 C.F.R. § 241.6). There already appears to be some level of communication or coordination between ICE and the U.S. Attorney's Office, as evidenced by the Government's affidavit indicating the sharing of information between the two offices. *See Government's Motion*, ECF no. 38, at 7. Nothing in the existing pretrial release order precludes ICE from honoring a request by the U.S. Attorney's Office to delay Mr. Lopez's removal until the conclusion of this matter. *See Exhibit 2. See also United States v. Villatoro-Ventura*, 330 F. Supp. 3d 1118 (N.D. Iowa 2018) (citing 8 C.F.R. § 215.2(a)) (ICE has ability to slow down removal process to enable criminal defendant's prosecution). ICE could issue an Order of Supervision (Form I-

220B), which would allow Mr. Lopez to be released (on his existing conditions) to face – and defend against – his criminal case, until ICE decides to ultimately effectuate the removal order. *See Exhibit 2*. Such an order typically required the supervised individual "to attend periodic ICE check-in appointments, and may also require an ankle bracelet or other form of monitoring under ICE's Alternatives to Detention program." *Id*. Thus, where other remedies are available to the Government to render Mr. Lopez available for trial, this Court need not – and should not – sanction the Government's attempt to secret Mr. Lopez away from the Department of Homeland Security into Department of Justice custody despite its previous determination that release was appropriate. "The problem here is not that [Mr. Lopez] will absent himself from the jurisdiction, but that two Article II agencies will not coordinate their respective efforts." *Barrera-Omana*, 638 F. Supp. 2d at 1111-1112. The solution is not to revoke Mr. Lopez's release, but to leave the two Article II agencies to resolve their own dispute.

## Conclusion

Because any changed circumstances have resulted from the Government's own actions, and not from any volition act of Mr. Lopez, and because the Government has remedies available that do not require the revocation of Mr. Lopez's pretrial release order, Mr. Lopez respectfully requests that this Court deny the Government's motion for reconsideration.

          Respectfully Submitted
          CARLOS LOPEZ
          By his attorney,

          <u>/s/ Jessica D. Hedges</u>
          Jessica D. Hedges
          BBO #645847
          Hedges & Tumposky, LLP
          88 Broad Street, Suite 101
          Boston, MA 02110
          (617) 722-8220

**CERTIFICATE OF SERVICE**

    I, Jessica Hedges, hereby certify that a true copy of the above document was served on all counsel of record, through the electronic filing system, on November 14, 2023.

          <u>/s/ Jessica D. Hedges</u>
          Jessica D. Hedges